## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**INTERNATIONAL PAINTERS
AND ALLIED TRADES INDUSTRY
PENSION FUND; GARY J. MEYERS,**

**Plaintiffs,**

v.                                                          **Case No. 8:07-cv-1138-T-23TBM**

**ANA ARAGONES,**

**Defendant.**
_____/

### REPORT AND RECOMMENDATION

THIS MATTER is before the court on referral by the Honorable Steven D. Merryday for a Report and Recommendation on Plaintiff's **Motion for Entry of Judgment by Default** (Doc. 11).[1]  By their motion, Plaintiffs seek entry of default judgment against Defendant with damages in the principal sum of $94,752.18 plus $37,995.89 in interest and attorney's fees and costs in the amount of $8,639.27 for a total amount of $141,387.34.  The court conducted a hearing on the motion on February 28, 2007.[2]

_____

[1]The motion is supported by the sworn declarations of Edward Meyers, the Executive Assistant to the Fund Administrator of the Plaintiff pension fund (Doc. 11-2); Frank E. Hamilton, Esq., local counsel for the Plaintiff, in support of the claim for attorney's fees (Doc. 11-3, 11-5, 11-6, 11-7); and Laura Lane, a consultant with Buck Consultants of Washington, D.C., who was tasked to calculate interest charges in connection with this loss by the pension fund (Doc. 11-4).

[2]At the hearing, pursuant to Rule 55(b)(2), the court heard a summary recitation of the evidence establishing the truth of Plaintiffs' allegations and the amount of damages claimed by Plaintiffs.  *See* Fed. R. Civ. P. 55(b)(2)(B), (C).  Plaintiffs amended the claim for damages and interest as originally set forth in the motion and announced these corrected amounts at the hearing.

I.

Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Unless the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, in which case the Clerk may enter default judgment, the plaintiff must move for default judgment. Fed. R. Civ. P. 55(b)(1). A defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact; the defendant is not, however, held to admit facts that are not well-pleaded or to admit conclusions of law. *Tyco Fire & Sec., LLC v. Alcocer*, No. 05-16180, 2007 WL 542583, at *2 (11th Cir. Feb. 22, 2007) (emphasis in the original) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)). "Thus, before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire*, 2007 WL 542583, at *2; *Fid. & Deposit Co. of Md. v. Williams,* 699 F. Supp. 897, 899 (N.D. Ga. 1988). Moreover, allegations relating to the amount of damages are not admitted by virtue of default, and the court must determine the amount and character of damages to be awarded. *Miller v. Paradise of Port Richey, Inc.,* 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).

II.

A.

The salient facts establishing Plaintiffs' entitlement to judgment are set out in Plaintiffs' Complaint (Doc. 1), the instant motion (Doc. 11), and memorandum in support

2

(Doc. 12).  Plaintiff International Union of Painters and Allied Trades ("IUPAT") Industry

Pension Fund ("Plan") is a trust fund and a "multi employer plan" and "employee benefit plan"

in contemplation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. §§ 1001-1461.[3]  Plaintiff Gary J. Meyers is a fiduciary of the Plan.  Defendant Ana

Aragones was the assigned beneficiary of the monthly pension benefits of Dean Aragones

under this Plan.

　　　Dean Aragones was a participant in the Los Angeles County Painting Industry

Pension Trust Fund ("LA County Plan").  Effective May 1, 1991, Mr. Aragones retired.  He

elected, with his wife's consent, that his accrued benefit under the plan be paid in "the 60

Months and Certain Life Annuity Form."  *See* (Doc. 11-2 at 8).  The initial benefit amount was

$586.19 per month.  In September 1991, the benefit was changed to a disability retirement

benefit and increased to $714.19 per month.  *See id.* at 3.  Ultimately, this amount increased to

a net monthly amount of $736.36 at his death.  *Id.*  Mr. Aragones died in September 1994 after

receiving forty-one payments.  Defendant, as beneficiary, was entitled to receive an additional

nineteen monthly benefit payments under the terms of the LA County Plan and their election of

benefits.  By letter dated October 1, 1994, the LA County Plan notified Defendant that the

remaining guaranteed payments were payable to her through April 1996.  *Id.* at 33.  Enclosed

---

[3]According to Mr. Meyers, the Plan was established by the IUPAT and employers in private industry.  It receives contributions from a number of unrelated employers pursuant to collective bargaining agreements with IUPAT or its affiliated local unions.  (Doc. 11-2 at 2-3). The fund was established for the purpose of providing retirement income to the employees of contributing employers.  *Id.*  The LA County Plan under which Dean Aragones was enrolled merged into the Plan in July 1995.  *Id.* at 4.

with the letter was the first payment of her benefits.  Defendant elected to receive her payments by direct deposit into her account with Bank of America, Richmond, Virginia.  *Id.* at 4.

Defendant was paid the sixtieth monthly benefit in April 1996.  According to Plaintiffs, an administrative error occurred at the time of the merger between the LA Plan and the Plan that entered Defendant's payment into the Fund computer system without a cutoff date.  As a result of the error, Defendant continued to receive benefits beyond April 1996.  In all, Defendant received 130 additional benefit payments.  *See* (Doc. 1).  After a comprehensive review of beneficiary payment records, the Plan uncovered the overpayments to Defendant and terminated Defendant's monthly payments as of February 2007.  On May 7, 2007, the Plan sent Defendant a formal notice of overpayment and debt collection with right to appeal seeking to recover the overpaid benefits.  *See* (Doc. 1-2 at 2-3).  According to Plaintiffs, Defendant has neither responded to this request nor made any repayment to the Plan despite her knowledge that she was not entitled to this money.  Plaintiffs filed suit in June 2007.

Plaintiffs claim that Defendant violated the terms of the Plan by cashing benefit checks after April 1996 (Count I), and on the same basis, they allege breach of contract (Count II) and conversion (Count III).  They further assert that Defendant is a fiduciary of the fund to the extent that she has received benefits not due to her, and they seek imposition of an ERISA trust (Count IV) and a constructive trust (Count V).  Finally, they assert a claim for unjust enrichment (Count VI).[4]  At present, Plaintiffs seek an award of damages measured by the

---

[4]It appears that Plaintiffs' claims for breach of contract, conversion, and constructive trust are brought solely under state common law theories and are pre-empted by ERISA.  *See* 29 U.S.C. § 1144(a); *see also Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1178 (11th Cir. 2006); *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1284 (11th Cir. 2005).  Here, the breach of contract claim clearly "relates to" the ERISA plan and is preempted.  ERISA itself permits the imposition of a constructive trust regardless of state law.  As for the claim of conversion,

overpayments to the Defendant, interest on that sum, and attorney's fees and costs.  The Defendant failed to file a responsive pleading or otherwise defend the action.  Plaintiff moved for entry of default against Defendant, *see (*Doc 3), and the Clerk entered default against the Defendant pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  *See* (Doc. 4). Plaintiff filed the instant motion for default judgment pursuant to Rule 55(b).  Defendant failed to respond to the motion, and although noticed for the hearing, she failed to appear for the hearing on the motion.

III.

Plaintiffs raise alternative theories for recovery of their losses under 29 U.S.C. § 1132(a)(2), (3).  *See* (Doc. 12).  On the premise that the terms of the Plan have been violated by Defendant's receipt of the 130 overpayments, they seek recovery of the funds on a theory of equitable restitution and/or unjust enrichment, or alternatively, they urge that Defendant is personally liable as a fiduciary under the Act and may be ordered to repay the sum of the overpayments and interest in lieu of profits.  Finally, they urge their right to an ERISA trust or other equitable lien on the res of the overpaid sum.  While it is clear that Defendant has breached the terms of the Plan in receiving 130 payments to which she was not entitled, the award of damages pursuant § 1132(a)(2) or (3) under any of these theories is problematic.

_____

courts considering the matter have found such state law claims preempted.  For instance, in *LoPresti v. Terwilliger*, 126 F.3d 34 (2d Cir. 1997), the court stated, "Insofar as the Trustee is seeking to recover losses to the Funds based upon a common law theory of conversion, undoubtedly, ERISA preempts such a claim."  *Id.* at 41 (citing *Dist. 65, UAW v. Harper & Row Publishers, Inc.*, 576 F. Supp. 1468, 1487 (S.D.N.Y. 1983).  These claims would not support the entry of final judgment in Plaintiffs' favor.

A.

As for the claim that Defendant is personally liable as a fiduciary by virtue of her receipt and disposition of funds of the Plan, Plaintiffs cite to 29 U.S.C. § 1132(a)(2), which provides that a civil action may be brought by the Secretary, a participant, beneficiary or fiduciary "for appropriate relief under section 1109." *Id*.  Section 1109 provides for the personal liability of "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter" and requires that such person "make good to such plan any loses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary. . . ." 29 U.S.C. § 1109(a).  Under the Act, a "fiduciary" is a person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority *or control respecting management or disposition of its assets*." 29 U.S.C. § 1002(21)(A)(i) (emphasis added).

Citing the latter part of this definition, Plaintiffs argue that because Defendant exercised complete control over Plan funds erroneously deposited into her account, she breached her fiduciary duty by failing to safeguard the assets for the benefit of the fund and other participants or beneficiaries and deliver them to the Plan when demanded to do so. (Doc. 17 at 7-8).  As discussed below, this theory of recovery is not clearly established in the Eleventh Circuit, but it is supported by the decisions in a number of federal circuits.

6

The decision in *Chao v. Day*, 436 F.3d 234 (D.C. Cir. 2006), is illustrative of those cases supporting Plaintiffs' theory of recovery.[5]  There, in a suit brought by the Secretary under § 1132(a)(2) and § 1109, it was alleged that Day was an insurance broker who accepted payments from ERISA plans for the purpose of purchasing insurance for the plans.  *Id.* at 235. Under his scheme, he sent invoices to the plans, received checks from the plans, deposited the checks into his corporate account, kept the money instead of purchasing insurance for the plans, and provided the plans with fake insurance policies.  *Id.*  Sued personally, Day urged that he was not a fiduciary under the ERISA because he did not exercise any discretionary authority over the plan's assets and therefore could not be sued under these provisions. Finding to the contrary, the district court and the court of appeals concluded that regardless of whether Day exercised any discretion over the plan's assets, through his use of plan funds for his personal benefit rather than the purchase of insurance, Day exercised "control" over the "disposition of plan assets" sufficient to bring him within the statutory definition of "fiduciary" and render him personally liable.

According to the court of appeals, the result was dictated by the plain language of the statute.  By its construction, the statutory definition of "fiduciary" under § 1002(21)(A)(I) consisted of two clauses to be read in the disjunctive:  (1) the "discretionary" clause that requires the exercise of "discretionary authority or discretionary control" and (2) the

_____

[5]Plaintiffs additionally cite to *John Hancock Mutual Life Ins. Co. v. Harris Trust & Savings Bank,* 510 U.S. 86, 95-96 (1993); *Srein v. Frankford Trust Co.*, 323 F.3d 214, 220-22 (3d Cir. 2003); *LoPresti*, *supra* at 5, n.4; *Bd. of Trustees of Bricklayers Local 6 of New Jersey Welfare Fund v. Wettlin Associates, Inc.*, 237 F.3d 270, 273 (3d Cir. 2001); *Ream v. Frey*, 107 F.3d 147 (3d Cir. 1997); and *Briscoe v. Fine,* 444 F.3d 478, 491 (6th Cir. 2006).  *See* (Doc. 12 at 7-8).

7

"disposition" clause that simply requires the exercise of "any authority or control." *Id.* at 236-37. By this construction and applying only the "disposition" clause, the D.C. Circuit held that Day was a "fiduciary" because he "undeniably had 'authority or control' over the 'disposition' of the plans' 'assets' . . . and was obligated to 'control' the 'disposition' of those funds for paying the plans' insurance premiums." *Id.* at 236. In short, the court concluded that "[b]ecause the disposition clause contains no 'discretion' requirement, it is irrelevant whether Day exercised 'discretion' in his thievery. [A]ny authority or control' is enough."[6] *Id.*

However, upon its review of pertinent case law, the court noted that the Eleventh Circuit appeared to apply a different construction to the definition of "fiduciary" that might not permit recovery. The court expressly rejected the Eleventh Circuit's construction of § 1002(21)(A) in *Useden v. Acker,* 947 F.2d 1563, 1574 (11th Cir. 1991), to the extent that it appeared to impute a "discretionary" requirement to the "disposition" clause. *See Day,* 436 F.3d at 237, n.1.

The Eleventh Circuit has addressed ERISA's definition of "fiduciary" in two cases and in both instances upheld the lower court determination that the defendant(s) in question were not fiduciaries. In *Useden v. Acker*, the Eleventh Circuit considered whether a bank occupying

---

[6]The *Day* court found its construction of "fiduciary" consistent with the decisions of the other circuits that have considered the issue. *See Day,* 436 F.3d at 237 (citing *David P. Coldesina, D.D.S., P.C., Employee Profit Sharing Plan & Trust v. Estate of Simper*, 407 F.3d 1126, 1132-35 (10th Cir. 2005) (holding an accountant is a "fiduciary" under the disposition clause where he wrongfully disbursed the plans' funds); *Srein*, 323 F.3d at 220-22 (holding a bank is a "fiduciary" under the disposition clause where it wrongfully disbursed the plans' funds); *LoPresti*, 126 F.3d at 40 (president of employer corporation acted as a fiduciary when he failed to separate insurance premiums deducted from employee paychecks and comingled them with corporate assets and used the fund assets to pay company creditors); and *IT Corp. v. Gen. Am. Life Ins.Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997) (a plan administrator is a "fiduciary" under the disposition clause where it wrongfully disbursed the plan's funds)).

an ordinary lender-borrower relationship and a law firm that counseled and drafted documents for the plan could be held personally liable as fiduciaries.  By the Eleventh Circuit's construction, ERISA defines a fiduciary "not simply in terms of certain designated offices, but also more flexibly, with reference to the functions performed by a person" and "the discretionary role needed to support fiduciary status must amount to more than a theoretical contrivance." *See Useden*, 947 F.2d at 1574.[7]

Additionally, the Eleventh Circuit has stated that "[a] person should not be attributed fiduciary status under ERISA and held accountable for performance of the strict responsibilities required of him in that role, if he is not clearly aware of this status as a fiduciary. . . ." *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1015 (11th Cir. 2003).  In *Hall*, the court was concerned with whether the so-called "disposition" clause of subsection (I) created personal liability for the manager or president of a corporation who failed to make contributions to the corporate pension plan in the absence of an understanding or clear language in the plan establishing that such payments were "assets" of the plan.  Concluding the record insufficient to allow for that determination, the court remanded the case for further proceedings noting that while ERISA "is a remedial statute deserving of broad construction," the court could not employ a broad

_____

[7]The court addressed the definition of fiduciary broadly and focused on the discretionary role that is required for an individual or entity to assume fiduciary responsibility under ERISA.  In the given facts, a bank which exercised authority over plan assets legally converting them by exercising ordinary banking powers under a lender-borrower relationship was not thereby rendered a fiduciary subject to personal liability.  Significantly, it noted that "relevant cases have even rejected ERISA fiduciary status when the lender acted improperly or outside its legal rights." *Id.* at 1576 (citations omitted).  Similarly, looking at the functional role played by the law firm in controlling the plan, the court concluded it "imprudent and counter to the thrust of the ERISA scheme to hold that the commingling of legal advice with incidental business observations . . . will automatically confer fiduciary status on attorneys and thus expose them to ERISA liability." *Id.* at 577-78.

construction to render ambiguous contractual language clear and without such clarity it was improper to impute fiduciary responsibilities. *Id.* at 1015.

In a subsequent decision, this court read Hall to have established two ways of imposing fiduciary duty on officers based on the single notion of notice. "Before fiduciary duty is imposed on an officer, he must have notice, either through clear contractual language or clear, shared intent of the parties." *Int'l Union of Painters & Allied Trades Dist. Council No. 78 Health & Welfare Fund v. Argyros*, No. 8:05-cv-1661-T-24TGW, 2007 WL 1577840 (M.D. Fla. May 31, 2007).

In sum, the "plain reading"of the statutory definition of "fiduciary" as given by a number of circuits would appear to support the imposition of personal liability on the Defendant as a fiduciary based on her wilful and wrongful conversion, that is, her exercise of control or authority over plan assets. The undisputed facts here reveal that Defendant knowingly received and retained plan "assets" to which she was not entitled as evidenced by her written consent to her husband's election to receive his benefits under a 60 Months and Certain Life Annuity Form. The overpaid benefits so received were undeniably plan assets over which Plaintiff exercised complete control.

While I endorse this construction under the so-called disposition clause in these circumstances, I am obliged to conclude that the Eleventh Circuit may give a more restrictive construction to the provision. It appears that Plaintiffs must demonstrate that Defendant, by agreement or other notice, understood that she was a fiduciary, with the attendant responsibilities, in relation to the payments she received beyond the sixty she was guaranteed by the Plan under her and her husband's election. Here, nothing in the submitted Plan language

10

clarifies Defendant's obligations or responsibilities to the Plan in these circumstances. However, Plaintiffs proffer Defendant's written consent to receive only sixty benefit payments in the event of her husband's untimely death, as well as the Plan's notice to her after her husband's death of her right to benefits only through April 1996 and the fact of Defendant's refusal to return the funds upon notice of the overpayment error.  At a minimum, such was sufficient to notify Defendant that any of the Plan's monies received after April 1996 were not hers and reason enough for her to know that she was responsible to the fund and its participants to return the overpayments.  Identifying Defendant as a fiduciary in these circumstances is more than a "theoretical contrivance."

In the given circumstances, absent a contrary decision from the Eleventh Circuit, I recommend the conclusion that Defendant is a fiduciary, responsible for carrying out the terms of the Plan under the election of benefits and thus personally liable to reimburse the fund for the overpayments.  *See* 29 U.S.C. § 1104.  On this conclusion, Plaintiff may be held personally liable for the amount of overpayments and also for paying the plan profits attained through her use of the funds.  *Id.* at § 1109.

B.

To the extent that Plaintiffs, at present, seek only recovery of the amount of overpayment with interest, such recovery under 29 U.S.C. § 1132(a)(3) is also problematic given the restrictive construction the Supreme Court has given to that provision.  Section 1132(a)(3) provides in pertinent part a fiduciary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to

11

obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Id.*

The Supreme Court has explained that "equitable relief" under this section means "*something* less than *all* relief" and refers to "those categories of relief that were *typically* available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256, 258 n.8 (1993) (emphasis in the original). This language "does not . . . authorize 'appropriate equitable relief' at large, but only 'appropriate equitable relief' for the purpose of redress[ing any] violations or . . . enforc[ing] any provisions of ERISA or an ERISA plan." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) (quoting *Peacock v. Thomas*, 516 U.S. 349, 353 (1996); *Mertens*, 508 U.S. at 253)). The Court later clarified that the characterization of relief sought as *equitable* relief for claims essentially seeking to impose personal liability for monies owed under a contract does not alter the claim that is "quintessentially an action at law." *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210 (2002) (quoting *Wal-Mart Stores, Inc. v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000)). Thus, claims such as those for injunctive relief, specific performance, or restitution are not necessarily available in equity where the claims are really *legal* in nature, such as where the claim is for an injunction to compel the payment of money past due under a contract, specific performance of a contract for the payment of money, or restitution as payment in return for a benefit conferred. The distinction between a legal or equitable remedy depends on the basis for the claim and the nature of the underlying remedies sought. *Knudson*, 534 U.S. at 213.

Focusing on restitution, the Court in *Knudson* clarified that a plaintiff could seek restitution *in equity,* ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging to the plaintiff could clearly be traced to particular

12

funds or property in the defendant's possession.  *Id.* at 214 (citing 1 Dobbs § 4.3(1), at 587-588; Restatement of Restitution § 160 cmt. a; 1 G. Palmer, Law of Restitution §§ 1.4, 3.7 (1978)).   In contrast, where a plaintiff cannot assert title or right to possession of particular property but can show grounds for the imposition of liability on the defendant to pay the plaintiff a sum of money, the remedy is legal in nature.  *Knudson*, 534 U.S. at 212-13.  In other words, "for restitution to lie in equity, the action generally must seek . . . to restore to the plaintiff particular funds or property in the defendant's possession."  *Id.* at 213.  Here, to the extent that Plaintiffs seek merely an award for the benefits wrongfully made to the Defendant, the remedy appears legal in nature and unavailable under this subsection as restitution.

As noted above, Plaintiffs' complaint also seeks the imposition of a constructive trust under ERISA over assets traced to Defendant.  Consistent with *Knudson*, the majority view, embraced by the Fifth, Seventh, Eighth, and Tenth Circuit, is that where a plaintiff's requested relief for reimbursement under ERISA § 502(a)(3) does not seek to impose personal liability, but instead seeks relief (such as a constructive trust) against specifically identifiable funds, such relief is equitable in nature and is permitted under § 502(a)(3).  *See Space Gateway Support v. Prieth*, 371 F. Supp. 2d 1364, 1368 (M.D. Fla. 2005) (citing *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 358 (5th Cir. 2003); *Admin. Comm. of Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Varco*, 338 F. 3d. 680, 687-88 (7th Cir. 2003); *N. Am. Coal*, 395 F. 3d at 917.

Such relief would appear available to Plaintiffs, except they concede that they do not know what amount, if any, of the Plan assets remain in the Defendant's Bank of America account due to her default and nonappearance in these proceedings.  Therefore, at present, the court is in no position to impose a constructive trust or other equitable lien or injunction under

13

§ 1132(a)(3).  However, to the extent that a judgment is entered in favor of Plaintiffs in this

case, the court should reserve jurisdiction over the matter of further equitable relief in the

nature of a constructive trust, equitable lien, or injunction as may be appropriate after discovery

in aid of execution.  *See North Am. Coal*, 395 F.3d at 917-18 (the court had jurisdiction under

§ 1132(a)(3) to impose a constructive trust over a credit union account used for deposit of

overpaid benefits, enjoin the defendants from disposing of any of such funds still in their

possession or control and requiring them to return the same, as well as provide an

accounting/tracing of the funds no longer in their possession or custody).

C.          .

As for the remedy of unjust enrichment, § 1132(a)(3) does not expressly allow for

recovery on a claim of unjust enrichment and such relief, seeking to impose personal liability on

Defendant, appears legal in nature and thus unavailable under this section.  There is a split of

authority on the appropriateness of such a recovery as a matter of federal common law.  The

Fourth Circuit in *Provident Life & Accident Insurance Co. v. Waller*, 906 F.2d 985 (4th Cir.

1990), found it appropriate under the circumstances of that case to create a federal common

law remedy of unjust enrichment consistent with and in furtherance of the statutory purposes of

ERISA.[8]  Several district courts within the Eleventh Circuit have followed the Fourth Circuit in

_____

[8]In *Waller*, the plan administrator advanced medical expenses to a plan participant who
was injured in a car accident.  Although the plan allowed for a right of subrogation and
participant admitted to recovering damages from a third party, the participant refused to
reimburse the plan.  After discussing the split in the circuits and its own concerns in fashioning
such a remedy, the court found that allowing a claim for unjust enrichment was consistent with
the plan in question, the statutory policies of ERISA, as well as state law governing unjust
enrichment and quasi-contract.  *Waller*, 906 F.2d at 993-94.  Referencing the provision of
ERISA that allows for the return of contributions mistakenly paid by employers to
multiemployer plan funds, 29 U.S.C. § 1103(c)(2)(A), the Fourth Circuit found that the statute
"indicates a desire to ensure that plan funds are administered equitably and that no one party,
not even plan beneficiaries, should unjustly profit."  *Waller*, 906 F.2d at 993.  However, the

14

recognizing a federal common law claim of unjust enrichment in the context of ERISA.

*See Unum Life Ins. Co. of Am. v. O'Brien*, No. 6:03-CV1433-ORL18DAB, 2004 WL 2283559

(M.D. Fla. Oct. 4, 2004); *Fick v. Met. Life Ins. Co.*, 347 F. Supp. 2d 1271, 1288-89 (S.D. Fla.

2004); *Met. Life Ins. Co. v. Solomon*, 996 F. Supp. 1473, 1477 (M.D. Fla. 1998); *Hercules,*

*Inc. v. Pages*, 814 F. Supp. 79 (M.D. Fla. 1993).  However, it appears that each of the other

circuit courts considering the matter have declined to find a federal common remedy of unjust

enrichment.  *See Coop. Benefits Adm'rs, Inc. v. Ogden,* 367 F.3d 323, 335 (5th Cir. 2004);

*Qualchoice, Inc. v. Rowland*, 367 F.3d 638, 650 (6th Cir. 2004); *Pacificare Inc. v. Martin*, 34

F.3d 834, 836 (9th Cir. 1994); *see also N. Am. Coal,* 395 F.3d at 917-18.

Neither the Supreme Court nor the Eleventh Circuit has addressed the right of such

recovery under ERISA.  However, while the Supreme Court has approved of the development

of a federal common law under ERISA, in the context of ERISA preemption, it has stated,

"The deliberate care with which ERISA's civil enforcement remedies were drafted and the

balancing of policies embodied in its choice of remedies argue strongly for the conclusion that

ERISA's civil enforcement remedies were intended to be exclusive."  *Pilot Life Ins. Co. v.*

*Dedeaux*, 481 U.S. 41, 54 (1987); *see also Sanson v. Gen. Motors Corp.*, 966 F.2d 618, 622-

23 (11th Cir. 1992).

The view of the majority of circuits examining the issue appears more persuasive.  In

enacting § 1132(a)(3), Congress appears to have chosen to proscribe the type of monetary

---

continued vitality of *Waller* has been questioned by a subsequent panel of the Fourth Circuit.
*See Provident Life & Accident Ins. Co. v. Cohen,* 423 F.3d 413, 423-24 (4th Cir. 2005).

relief sought on a claim of unjust enrichment leaving no "gap" needing filling by the creation of a federal common law remedy.[9]

### D.

As to the matter of damages, Plaintiffs assert that they are entitled to an award of $94,752.18 in damages as measured by the actual amount of overpayment of benefits made to the Defendant and $37,995.89 in interest on the overpayments.  Interest is calculated in accordance with the regulation at 26 C.F.R. § 1.417(c)-1(b)(iv).  S*ee* Dec. of Laura Lane (Doc. 11-4).[10]  Both sums appear accurately calculated and the award of interest reasonable and appropriate in light of the circumstances of this case.

---

[9]Should the court disagree, Plaintiffs can satisfy the elements of a claim for unjust enrichment:  "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof."  *See Solomon*, 996 F. Supp. at 1475 (citing *Hercules*, 814 F. Supp. at 80).  Here, the proffered evidence supports these elements.  In particular, the Plan conferred a benefit on Defendant by paying her 130 monthly payments beyond the sixty monthly payments to which she was entitled; Defendant appreciated the overpayments upon notice and demand for repayment of same; and Defendant accepted and retained (or disposed) of the overpayments.  As such, Plaintiffs may recover the overpayments under a theory of unjust enrichment.

[10]If damages are awarded under § 1132(a)(2), interest is sought in lieu of profits Defendant made through use of the Plan funds in accordance with § 1109.  If an award is fashioned under § 1132(a)(3), (or on a theory of unjust enrichment), the award of prejudgment interest appears committed to the discretion of the court.  *See Green v. Holland*, 480 F.3d 1216 (11th Cir. 2007) ("The award of an amount of prejudgment interest in an ERISA case is a matter committed to the sound discretion of the trial court."  *Id.* (quoting *Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Ala.*, 41 F.3d 1476, 1484 (11th Cir. 1995), and discussing with approval *Cheal v. Life Ins. Co. of N. Am.*, 330 F. Supp. 2d 1347, 1352 (N.D. Ga. 2004)).

CASE 8:07-CV-01138-SDM-TBM  Document 20  Filed 04/11/08  Page 17 of 19 PageID 145

In addition to damages, Plaintiffs also seek an award attorney's fees and costs, which the court, in its discretion, may allow under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1). Unlike other federal fee-shifting provisions that give the court discretion to award fees to the prevailing party, this provision allows the court to award fees to either party, and there is no presumption in favor of awarding fees and costs to a prevailing claimant in an ERISA action. *Freeman v. Cont'l Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993). The Eleventh Circuit has enumerated five factors for district courts to consider when deciding a motion for attorney's fees: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the party requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1344 (11th Cir. 2001); *Florence Nightingale Nursing*, 41 F.3d at 1485 (11th Cir. 1995); *Freeman*, 996 F.2d at 1119. "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address. . . . In particular types of cases, or in an individual case, however, other considerations may be relevant as well." *Freeman*, 996 F.2d at 1119 (quoting *Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co.*, 932 F.2d 1443, 1452 (11th Cir. 1991); *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)).

In this instance, the Defendant appears the more culpable party.  Although the Plan admits that the overpayments were the result of its own errors, Defendant was well-advised that she was not entitled to the overpayments, both by written notice from the Plan and by virtue of her agreement to consent to her husband's election of benefits.  This factor favors the Plaintiffs.  Additionally, I find that an award of fees would serve the salutory purpose of deterring other Plan beneficiaries from acting in a similar fashion in the event of an overpayment.  The Plaintiffs' efforts to recoup the overpayments benefits the Plan as a whole, and this also militates in favor of an award of fees.  Finally, the merits of the suit, as established by the proffered evidence, appear to favor Plaintiffs' position entirely, particularly since the Defendant has defaulted.  Because of Defendant's default in this matter, the court is unable to assess her ability to satisfy an award of fees.  In weighing these factors, the undersigned recommends an award of fees to the Plaintiffs.[11]

---

[11]The Supreme Court has held that the lodestar approach governs the attorney's fees analysis under fee-shifting statutes.  *See City of Burlington v. Dague*, 505 U.S. 557, 561-62 (1992).  Under the lodestar approach, the value of the lawyer's services is initially determined by the product of hours reasonably expended multiplied by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).  Here, Plaintiffs seek an award of $8,639.27 in fees and costs incurred through December 1, 2007, based on 19.8 hours of work performed by Kent G. Cprek, Elizabeth A. Coleman, and Jennifer L. Hope of the Jennings Sigmond firm at a rate of $200 per hour; 23.7 hours of work performed by Frank Hamilton at a rate of $175 per hour; and costs in the amount of $531.77.  *See* Dec. of Frank E. Hamilton, III (Doc. 11-3, 11-5).  Upon review, the hourly rates, hours expended, and costs expended appear reasonable.

IV.

Accordingly, it is recommended that the court GRANT Plaintiffs' Motion for Entry of Judgment by Default (Doc. 11) and direct the Clerk to enter final judgment in Plaintiffs' favor in the total amount of **$141,387.34**, which sum should bear interest at the usual and lawful rate for federal court judgments.  It is further recommended that the court reserve jurisdiction to award such equitable relief as may be appropriate in the future and additional interest and fees and costs, if any, incurred through the date of judgment.

Respectfully submitted on this
11th day of April 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record
Unrepresented Defendant